In the Matter of the Judicial Settlement of the Account of Proceedings of GEORGE E. WYMAN, as Administrator with the Will Annexed of ELIZABETH N. BLAKE, Deceased.

WILLIAM F. COOPER and Another, Appellants; GEORGE C. BOWES and Others, Respondents.

First Department, June 18, 1929.

*Joseph F. Murray*, for the appellant George E. Wyman.

*Milton P. Kupfer* of counsel [*Sylvester Pindyck* and *Max Taylor* with him on the brief; *Oppenheimer, Kaufman, Haiblum & Kupfer*, attorneys], for the appellant William F. Cooper.

*Edward A. Brown* of counsel [*Ernest M. Morrison*, attorney], for the respondent George C. Bowes.

*Robert E. L. Lewis* of counsel [*Ferriss & Lewis*, attorneys], for the respondent Horace B. Haskell.

O'MALLEY, J. This is an appeal by the administrator c. t. a. of one Elizabeth N. Blake, deceased, and a creditor of said testatrix, one Cooper, from so much of a decree of the surrogate as disallowed a certain payment by the administrator to said creditor. The payment was made by virtue of assignments by the deceased to her creditor of certain trust income to accrue. These assignments have been held invalid under section 15 of the Personal Property Law (as amd. by Laws of 1911, chap. 327).

Concededly if the trust fund was created by the decedent for her own benefit and she may be regarded as the settlor thereof, the assignments were valid. On the other hand, if the trust is to be deemed as having been created for her benefit and she may not be regarded as the settlor, then the assignments were invalid and the determination appealed from correct.

The question to be determined makes necessary a consideration of the facts and circumstances surrounding the creation of the trust. Sometime in 1900 the deceased became the owner in fee of various parcels of valuable real estate which had been conveyed to her by one Peter L. Ronalds. After his death in 1905, his children sought to avoid such conveyances and an action was instituted against the deceased for such purpose. Shortly thereafter this action and all differences between the parties and claims to the property were agreed to be settled and compromised pursuant to a formal instrument entered into between the parties. By such agreement the deceased agreed to convey all of the real property involved to certain trustees to sell the same, or as much thereof as might be necessary; and after paying the sum of $2,350 to the deceased, there was to be set up a trust fund of some $200,000, the income of which was to be paid to her during life. At the expiration of such time the trust fund was to go to the Ronalds children.

It is also provided that until the necessary property could be sold the deceased was to receive the income from all of the real property up to a certain amount, and that after the trust had been established, the balance of the property, or the proceeds thereof, should forthwith go to the Ronalds children. The action previously instituted to recover the real property was to be discontinued and it was acknowledged that the agreement was made for a good and valuable consideration by all of the parties. After the execution of this agreement the deceased executed a deed of trust in accordance with its terms, whereby she granted, conveyed and released to the trustees and to the Ronalds children the real property involved.

These facts lead to the conclusion that, so far at least as the

trust fund in the amount of $200,000 was concerned, the deceased was the settlor or creator. By the settlement agreement she did not waive her legal title to the real property which had been the subject of the litigation. This is true certainly with respect to such portion thereof as was ·necessary to establish the trust fund of $200,000. It may not be said that she was coerced into such settlement, nor that she was merely refunding or returning that which belonged to others. The agreement provided that it was made without any representations and that it was for a good and valuable consideration. The deceased admitted neither any defect in her own title nor any merit to the claim of the Ronalds children. She was simply buying her peace. The action was discontinued. Because,· instead of in the first place setting up the trust, the deceased entered into an agreement to create it as part of a larger agreement, does not alter the fact that it was the deceased who created such trust. She, therefore, could assign a portion of the income therefrom. (*Schenck* v. *Barnes,* 156 N. Y. 316; *Raymond* v. *Harris,* 84 App. Div. 546; *Kene* v. *Hill,* 102 id. 370; *Newton* v. *Hunt,* 134 id. 325; affd., 201 N. Y. 599.)

It follows, therefore, that the decree in so far as it is appealed from should be modified by allowing the payment in question and as so modified affirmed, without costs.

FINCH and McAVOY, JJ., concur; MARTIN, J., and DOWLING, P. J., dissent.

MARTIN, J. (dissenting). After the death of Peter L. Ronalds in the year 1905 it was discovered that during his lifetime he had conveyed, without any apparent consideration, to Elizabeth N. Blake practically all his property consisting of parcels of real property located in Manhattan, city of New York, of the estimated value in December, 1905, of $337,000. He also conveyed to her a parcel of land with the buildings thereon, situated at Newtown, Conn., which was known as " Castle Ronalds."

On October 25, 1905, his son, Reginald Ronalds, residing in New York city, commenced an action in the Supreme Court, New York county, against Elizabeth N. Blake, to set aside the conveyances affecting the real property situated in the county of New York, on the ground they were procured through fraud, and on the same day he filed a notice of pendency of action in the clerk's office of New York county.

On December 9, 1905, Elizabeth N. Blake, as party of the first part; the children of Peter L. Ronalds deceased, as parties of the second and third parts; Mary Frances Ronalds· (widow of Peter

L. Ronalds), as party of the fourth part; Edgar J. Phillips and Abraham I. Elkus, as trustees, parties of the fifth part, and Bertha Perry Ronalds (wife of Pierre Lorillard Ronalds, Jr.), as party of the sixth part, entered into an agreement in writing to create a trust for Miss Blake and settle the matters in controversy between her, Mrs. Ronalds and the Ronalds children.

By the terms of the agreement to create the trust Elizabeth N. Blake agreed to convey the property in question to Mr. Phillips and Mr. Elkus, as trustees. The trustees were to collect and pay the net rents from the property to Miss Blake until enough of the property could be sold or mortgaged by the trustees to create a trust fund. The payment of the rents from the real estate was to then cease and the net income from the $200,000 trust fund was to be paid to Miss Blake during her life. At her death the corpus of the fund was to go to the children of Peter L. Ronalds as remaindermen. It was further provided that " immediately upon the full creation of the $200,000 trust fund " and after further specified payments the trustees shall forthwith *turn over to the children of Peter L. Ronalds* any cash or securities in their hands as such trustees, other than the principal of the trust funds and the income therefrom, and *any unsold real estate shall forthwith vest in said children free from any trusts*, and the trustees and Miss Blake shall, if required, execute and deliver proper deeds or other instruments as may be necessary to confirm the foregoing and the said trust *as to such remaining property shall cease.*

This agreement to create a trust, made on December 9, 1905, was followed by a supplemental agreement dated December 27, 1905, and by a deed of trust, pursuant to the first agreement, also dated December 27, 1905.

When the transfer of the real property to Miss Blake was made the rights of the wife of Peter L. Ronalds were wholly disregarded. It was, therefore, agreed that the dower rights and all rights of Mary Frances Ronalds, widow of Peter L. Ronalds, in the rent of the property were to be reserved to her.

There are other provisions of the agreement of December 9, 1905, tending to show that at that time all of the parties thereto regarded the said several parcels of real property out of which the $200,000 trust fund was to be created, as being owned by the Ronalds children. This is emphasized by the agreement to retransfer all the real property remaining after sufficient had been sold to obtain funds to establish the trust, and that the corpus of the trust should belong to the children.

After the creation of the trust the life tenant assigned the ncome thereof. The validity of that assignment is now being

questioned by the appellants. They contend that section 15 of the Personal Property Law (as amd. by Laws of 1911, chap. 327) applies to this trust and prohibits such an assignment. That section, as far as material, provides as follows: " The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, cannot be transferred *by assignment or otherwise*. But the right and interest of the beneficiary of any other trust in personal property may be transferred."

The facts and circumstances surrounding the creation of this trust show that it is not the ordinary case of an individual voluntarily creating a trust for her own benefit. The purpose of excepting from the operation of the statute a voluntary trust created by the beneficiary was to prevent the placing of property beyond the reach of creditors by means of a trust. If the law did not except such trusts from the provisions of section 15 of the Personal Property Law, creditors might be defrauded, and the statute thereby converted into an instrument for evil.

The trust set up for the benefit of Miss Blake was not the result of a voluntary act on her part. However, conceding that the trust was created by her, she was confronted with the alternative of either accepting the income from that trust, the terms of which were dictated by the Ronalds children, or being involved in a lawsuit instituted by them to set aside all the conveyances of property made to her by Mr. Ronalds during his lifetime.

Treating her as grantor in the deed of trust was only a convenient way of setting up the trust. The children of Ronalds claimed the property and demanded of Miss Blake that she convey the legal title to them. Under the agreement of December 9, 1905, Miss Blake was to convey the legal title of the property either to the Ronalds children or to the trustees, thereby saving them the trouble and notoriety of a lawsuit, and they were to create a trust fund of $200,000 and provide that the income therefrom be paid to Miss Blake for the term of her natural life, with remainder over to them.

Instead of having Miss Blake first convey the property to the children of Ronalds and having them reconvey a portion of it to the trustees, further complicating the transaction, especially should any of the Ronalds children be infants, it was decided that Miss Blake convey all the property to the trustees and that the instrument creating the trust should provide that a trust fund of $200,000 be set up, the income from which should be paid to Miss Blake for the term of her natural life. In reality the trust was created by the children of Ronalds out of the property which they owned,

and Miss Blake by executing the agreement of December 9, 1905, in effect admitted it belonged to them.

A more complete admission could not have been made by Miss Blake that the property belonged to the next of kin and widow of the decedent than is contained in the fact that she transferred the property to the trustees, reserving a right only to the income of a trust fund which was created to the extent of $200,000 and which gave her an income of upwards of $9,000 a year.

The settlors of the trust in reality were the owners of the trust funds. The owners of the trust funds and the parties to whom they were eventually transferred were the next of kin of the decedent Peter L. Ronalds.

Although Miss Blake obtained the income of the trust fund she could not be considered as having been the owner at any time of the corpus of the trust fund which belonged to the children of Peter L. Ronalds. While the legal title to the property was for a short time in her, it was about to be divested because of fraud and a decree in the fraud action would no doubt have fixed the title as always having been in the Ronalds family.

We would have to disregard the real facts to hold that Miss Blake was the settlor of the trust. She never would have relinquished her claim to the property if she were the owner thereof.

In *Schenck* v. *Barnes* (156 N. Y. 316) the court held that the test was whether the trust was created by the party who received the income. If it was created by such party the income was assignable. If created by a third party, the income was not assignable. The court said: " The statute is obviously designed to assist the creators of trusts in protecting and caring for the beneficiaries who are the natural objects of their solicitude and care, but it cannot be invoked by a debtor to protect a trust which he has created to serve in time of need as a refuge from his creditors."

In *Central Trust Co.* v. *Gaffney* (157 App. Div. 501; affd., 215 N. Y. 740), both affirmances being on the opinion of the referee, it was held that the income of a trust fund could not be assigned where the settlor was a third party.

The decree of the surrogate should be affirmed.

DOWLING, P. J., concurs.

Decree so far as appealed from modified by allowing the payment in question and as so modified affirmed, without costs. Settle order on notice.