## In the Matter of the Estate of JOHN McCOY, Deceased.

Surrogate's Court, Bronx County, November 20, 1935.

*Francis Colety,* for the executrix.

*Joseph W. Freifeld,* for Florence McCoy, claimant.

*Platt & Walker [Winthrop G. Brown* of counsel], for the Anahma Realty Corporation, claimant.

HENDERSON, S. Two creditors have objected to the account of the executrix, Vera Thomas McCoy. The claim of one was allowed in full by the executrix and its objections are addressed to alleged omissions in Schedule A.

The testator's former wife filed a claim for arrears due under an agreement for her support by the decedent. This claim is not disputed. Subsequently she filed a claim in a larger sum for arrears alleged to be due under an earlier agreement of like nature.

Under date of November 24, 1923, while the decedent and the claimant were married but living apart, they executed an agreement for her support (hereinafter designated as the " support agreement "), whereby the decedent agreed to pay her a minimum sum of $150,000 each year, during her life, or until two years after her remarriage. This annual minimum was subject to reduction by the amount of income received by her yearly under the provisions of a trust agreement (hereinafter designated as the " trust agreement ") executed by them for her benefit and dated October 23, 1923. This " trust agreement " provided for decedent's assignment to a corporate trustee of 250 shares of the capital stock of the Alicia Realty Company and the division thereof into two equal parts. The trustee was directed to pay the income from one part (hereinafter designated as the " first trust ") to the claimant during her life and then to transfer the 125 shares of this " first trust " to the lawful heirs of her body her surviving, or if none, as directed by her will, or, in default of either, to the decedent, " his heirs executors administrators and assigns." The income from the other part (hereinafter designated as the " second trust ") was directed to be paid to the decedent during his life and then to the claimant, if she survived him and had not married another, until her death or

remarriage. The trustee was directed, upon the death or remarriage of the claimant, to transfer the 125 shares of this " second trust " as directed by the decedent in his will, or, in default of such appointment, to " his heirs executors administrators and assigns."

Subsequently the claimant obtained a divorce in France, but she has not remarried.

This " trust agreement " was not executed by the trustee, but on March 4, 1924, the decedent and the corporate trustee executed two trust deeds (hereinafter respectively designated as the " first trust deed " and the " second trust deed "), whereby the decedent assigned to the trustee all the " securities " mentioned in the trust agreement in equal proportions for each " trust." In the " first trust deed " the provision for payment of the remainder, in the event that the claimant left no issue and did not exercise the power of appointment and that the decedent predeceased her, reads: " then unto the person or persons who would then be the lawful heirs " of the decedent " if he had died immediately after the death of " the claimant. The " second trust deed " provided for the payment of the remainder, in default of the decedent's appointment, to . " the lawful heirs of the " decedent " determined at the date of his death." The trustee has paid the income in accordance with the " trust agreement," the " trust deeds " and the subsequent direction of the decedent as to his share thereof.

In 1931 the decedent defaulted, and on March 17, 1932, when the arrears were considerable, the parties executed two separate agreements under seal. Each party was represented by counsel.

In one (hereinafter designated as the " modification support agreement ") the earlier support agreement was modified in the following respects: the annual sum was reduced to $8,000, effective January 1, 1932, and made payable in specified installments; the payments were to continue only during their joint lives, with the exception that if the claimant died prior to March 15, 1933, the decedent would thereupon pay an additional sum of $1,200 to the claimant's estate or to her designee; the annual sum payable during both lives for two years after her remarriage was reduced to $4,000, and the amounts payable during the decedent's life were also to be reduced by the amount of the income received by her under the " trust agreement."

At or immediately prior to the execution of this " modification support agreement," the decedent paid the claimant $1,750 in payment of all installments then accrued under the provisions of the " support agreement," and the further sum of $500, not " on account of the said sum of $8,000, but * * * in order to assist her to make payments on account of her indebtedness to other parties."

In the " modification support agreement " the claimant waived " any and all claims for payments that accrued or became due prior to January 1st, 1932, under the terms of any agreement other than this present agreement dated March 17th, 1932." The intention of the parties was expressly stated to be that such payment of the annual sum of $8,000, less trust income, " shall constitute and be the sole obligation that shall remain to the " decedent " in respect of making the payments for the maintenance and support of the " claimant " and shall take the place of any and all obligations on the part of the " decedent " of contributing to the maintenance and support of or making payment of any money to the " claimant. The " modification support agreement " recites that the decedent requested the claimant, and she was prepared to agree, to accept for her maintenance and support, an amount less than that called for by the terms of the earlier agreements. It was made " in consideration of the premises and the covenants herein contained and for other good and valuable consideration, receipt of all of which is hereby acknowledged." It also recites the establishment of the " two trusts " in accordance with the terms of the earlier agreements. The total money then paid the claimant, $2,250, plus the additional sum, $1,200, to be paid her estate upon the specified contingency, amounted to less than half of the indebtedness then admittedly past due under the earlier " support agreement."

The other agreement of March 17, 1932 (hereinafter designated as the " modification trust agreement "), recites the execution of the " trust deeds " and the creation thereby of the " two trusts." It purports to modify the earlier " trust agreement " in certain respects. The decedent assigns to the claimant " all income which may hereafter become due and payable to him under the provisions of the second trust " and " irrevocably directs " the trustee " to make such payments to " her " directly, so long as she shall live." Provision is made for the termination of the assignment upon the claimant's remarriage after, " but not before," the decedent's death. The claimant agrees that, in the event of her death leaving no surviving children, " she will not exercise the power of appointment given her pursuant " to the " first trust deed," and directs the trustee, in such event, to pay the principal to the decedent, or, if he has predeceased her, to " the person or persons who would then be the lawful heirs of the " decedent " if he had died immediately after " her death. This " modification trust agreement " contains no express recital of consideration. It states that the income " assignment shall be and be deemed to be irrevocable."

The claimant asserts that the " modification support agreement " of March 17, 1932, is void because it was made without consideration and under duress.

Both parties to that agreement were represented by counsel and upon the evidence I find that the claimant was under no legal duress at the time of its execution, and that its execution was not attended by any fraud.

The executrix urges that the claimant cannot claim under both agreements, and contends that the latter received consideration for both modification agreements as " appears from the documents themselves." The other objecting creditor, Anshma Realty Corporation, urges that such consideration was the irrevocable assignment to the claimant by the decedent of the income payable to him from the " second trust." The executrix also asserts that the claimant ratified the agreements of March 17, 1932, by accepting and retaining the extra money thereby given her and also the income from the " second trust," and further by filing a verified proof of claim in this estate on December 11, 1933, which was limited to the amount concededly due her under the " modification support agreement."

On December 10, 1932, the claimant began an action against the decedent to rescind and set aside the agreements of March 17, 1932. This action was discontinued prior to the hearing herein.

There was, and is, no dispute as to the amount due and unpaid by the decedent to the claimant under the support agreement at the time when the " modification support agreement " and the " modification trust agreement " were executed. Hence there can be no accord and satisfaction thereof by the bare payment of a sum less than the amount then admittedly due (*Schuttinger* v. *Woodruff*, 259 N. Y. 212, 216), without other consideration, which may be the additional transfer of something of unfixed value or of a chose in action owned by the debtor. (*Hettrick Manufacturing Co.* v. *Barish*, 120 Misc. 673, 677; affd. on opinion of Bijur, J., in App. Term, 209 App. Div. 807.) Mr. Justice Bijur, writing the opinion in the Appellate Term, traced the history of the doctrine of accord and satisfaction of a " liquidated " debt from the time when the rule was established in *Pinnel's Case* (3 Coke, part 5, p. 117-a) that a lesser sum of money cannot be a satisfaction of a greater sum, unless paid and accepted in full satisfaction prior to the date of the latter's maturity or at a place requested by the creditor other than that designated for payment. His examination of authoritative cases disclosed that, as to matured and admitted indebtedness, the application of the rule is limited strictly to cases within its confines and that courts have departed from it upon slight distinctions. Judge Crane, now Chief Judge, writing the opinion in *Schnell* v. *Perlmon* (238 N. Y. 362), found similar departures from the rule and cited such opinion of Mr. Justice Bijur with approval.

Aside from the above-noted payments and promise of money payments, the only thing done or promised by the decedent at the time of the execution of the agreements of March 17, 1932, was the " irrevocable " assignment of the income payable to him from the " second trust."

· The assignment by the decedent of his future income from the " second trust " was a transfer of his right, as beneficiary thereof, to enforce the performance of a trust to receive income of personal property and to apply it to the use of a person. However, such assignment is not void under the statute (Pers. Prop. Law, § 15), because the assignor was the settlor of the trust. (*Schenck* v. *Barnes,* 156 N. Y. 316, 320; *Matter of Blake,* 226 App. Div. 580, 582, 584; affd., 252 N. Y. 613.) This assignment of the decedent's chose in action secured the claimant, in addition to such rights as she already had, to the extent of such income thereafter payable although the amount thereof might vary from time to time. The value thereof was not fixed, and was not definitely ascertainable. However, it was accepted by the claimant and must be deemed sufficient consideration for the satisfaction and waiver of the balance of the past indebtedness then not paid. (*Schnell* v. *Perlmon, supra; Hettrick Manufacturing Co.* v. *Barish, supra.*)

Having reached this conclusion, it is unnecessary for me to determine whether or not the claimant's waiver in the " modification support agreement," executed prior to the 1935 enactment of the present statute in abrogation of the common-law rule concerning sealed instruments (Civ. Prac. Act, § 342), may be separated from the rest of the document so as to constitute a separate release and non-executory instrument under seal with the consideration therefor conclusively presumed under the common law (*Hogan* v. *Producers' Development Co.,* 200 App. Div. 29); and, if it is such a release, whether or not it may be revoked for failure of the promised consideration. (*McCreary Co.* v. *People,* 267 N. Y. 37, 41; *Stiebel* v. *Grosberg,* 202 id. 266, 270.)

The claimant also asserts that she is a preferred creditor, because her claim is for unpaid alimony, and cites *Matter of Curtis* (188 App. Div. 470; affd., 228 N. Y. 534) in support of her contention. Assuming that the claimant's French decree awarded alimony to her, the cited case is not in point, although it is authority for preferring a claim for alimony unpaid under a divorce decree entered in a court of this State. (Surr. Ct. Act, § 212, subd. 3.) The only reference in *Matter of Curtis* to a foreign decree is a citation of another case (*Matter of Williams,* 152 App. Div. 385; affd., 208 N. Y. 32), with the statement that a New York judgment had been obtained by the claimant therein after suit upon a judgment of

divorce in another State whereby alimony had been awarded. The New York judgment was docketed prior to the decedent's death and was contested on the ground that it had been discharged by the decedent's subsequent bankruptcy.

Our statute, above cited, under which a certain preference is given to judgments docketed, and decrees entered, against a decedent refers only to those docketed or entered in courts of this State. It is founded on the common-law principle that a debt of record is superior to either a specialty debt or a simple contract debt. The preferred debts of record under the common law of England embraced decrees in chancery and judgments of all courts of record in England. (*Ainslie* v. *Radcliff*, 7 Paige, 439, 447.) Foreign judgments and decrees were never given priority over simple contract debts under the common law; and after the " act of Union," even an Irish judgment was not given priority in England (*Brown* v. *Public Administrator*, 2 Bradf. 103). In the last cited case it was held that creditors under foreign judgments are merely general creditors and are not entitled to any priority in payment. While the present claim is for unpaid alimony under a valid separation agreement, it has not been reduced to judgment in this State and is entitled to no preference under subdivision 3 of our statute prescribing the order in which a decedent's debts are payable (Surr. Ct. Act, § 212). That statute is the only authority for any preference in the payment of a resident decedent's debts. Subdivision 1 thereof refers only to laws relating to debts of a decedent. Federal or domestic laws prescribing preferences in payments of debts of a bankrupt or of an assignor for the benefit of creditors are inapplicable to the payment of this decedent's debts. (*Matter of Bawer*, 137 Misc. 646.) The claimant is not a preferred creditor.

The claim of the decedent's former wife under the earlier " support agreement " is dismissed. Her other claim under the later " modification support agreement," allowed by the executrix, is a valid debt and is allowed as a general claim.

Objections have also been made to the failure of the executrix to include in her account as assets of the estate the remainder interests in the trusts. To determine whether or not the executrix has accounted for all the assets it is necessary to first construe the *inter vivos* trusts. The matter relates to this decedent's affairs and I have complete jurisdiction to make such construction. (Surr. Ct. Act, § 40; *Matter of Raymond* v. *Davis*, 248 N. Y. 67, 71; *Matter of Lyon*, 266 id. 219, 223.) I would exercise such jurisdiction and direct the bringing in of the other necessary parties were it not for the following circumstances which render impracticable a present construction and prevent a " full, equitable and complete disposition

of the matter " at this time. The gross estate, exclusive of such determination, is valued at less than $2,000, while the aggregate of the conceded debts exceeds $10,000. The corpus of each trust consists of shares of stock in a realty corporation, the true value of which is not ascertainable with sufficient definiteness to work equity and justice between the creditors and the testamentary beneficiary who is entitled to the net estate, if any. There can be no doubt that, in the present real estate market, no fair price could be obtained upon a sale of such remainder interests. If the remainders are assets of the estate and the only parties actually interested therein are conceded to be the creditors, participation interests in the remainders could be decreed to be assigned to them in proportion to their respective claims. That is not the situation here. The testamentary beneficiary would take any excess of such remainders over the amount required to pay the debts. It is obvious that complete justice among the parties may not now be decreed unless the question of construction be determined adversely to the contention of the objecting creditors. Hence, justice as well as equity requires that the determination of such objections be suspended until the termination of the trusts when the trustees may account in the Supreme Court or the matter may be determined upon the hearing of appropriate objections to an account then rendered in this estate.

The executrix will remain charged with such rights as this estate may have in said trusts. In all other respects, these objections are dismissed without prejudice.

All objections to the account which have not been withdrawn or otherwise hereinabove determined, are dismissed.

Settle decree.