GUARANTY TRUST COMPANY OF NEW YORK, as Trustee under a Deed of Trust, Dated February 14, 1916, Respondent, *v.* NEW YORK TRUST COMPANY, as Executor and Trustee under the Will of CORNELIUS J. SULLIVAN, Deceased, et al., Appellants; HELEN SULLIVAN et al., Respondents, et al., Defendants.

Argued May 26, 1947; decided July 2, 1947.

*Chester Bordeau* for New York Trust Company, as executor and trustee under the will of Cornelius J. Sullivan, deceased, appellant. I. Defendant executor is entitled to the principal under the agreement of trust dated February 14, 1916, at its termination upon the death of the life beneficiary. (*Doctor* v. *Hughes,* 225 N. Y. 305; *City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134; *Fish* v. *Chemical Bank & Trust Co.,* 270 App. Div. 251; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.,* 295 N. Y. 488; *Whittemore* v. *Equitable Trust Co.,* 250 N. Y. 298; *Engel* v. *Guaranty Trust Co.,* 280 N. Y. 43; *Guaranty Trust Co.* v. *Armstrong,* 294 N. Y. 666; *Culver* v. *Title Guarantee and Trust Co.,* 296 N. Y. 74; *Persky* v. *Bank of America Nat. Assn.,* 261 N. Y. 212; *United Paper-Board Co.* v. *Iroquois Pulp & Paper Co.,* 217 App. Div. 253, 249 N. Y. 588.) II. The residuary trust contained in the will is valid. (*New York Life Insurance & Trust Co.* v. *Cary,* 191 N. Y. 33; *Farmers' Loan & Trust Company* v. *Kip,* 192 N. Y. 266.) III. Under the agreement of trust, the legatees under the will are entitled to the principal. IV. The will of the decedent was an exercise of the power in favor of such decedent's general estate. (*Matter of Lynn,* 261 App. Div. 513, 287 N. Y. 627.)

*John Lane, Gerald Donovan,* in person, *George W. Bacon* and *Edward A. Silliere* for Gerald Donovan and another, as executors of Mary Sullivan, deceased, appellants. I. The members of the class entitled to the principal of the trust must be determined as of the date of death by the statute then in effect. II. At the date of death of the decedent in 1932, his widow was one of his " next of kin " entitled to receive the principal of the trust under the statute of distributions if the said principal had been owned by him at the time of his death intestate with respect thereto. (*Matter of Koch,* 282 N. Y. 462; *Hutchison* v. *Ross,* 262 N. Y. 381; *Matter of Waring,* 275 N. Y. 6; *Matter of Battell,* 286 N. Y. 97; *Matter of Hecker,* 178 Misc. 449; *Matter of Bates,* 173 Misc. 703.) III. The intention of the donor or testator shall determine whether the widow is to be included among the next of kin. (*Matter of Fordham,* 235 N. Y. 384;

*New York Life Insurance & Trust Co.* v. *Winthrop,* 237 N. Y. 93.) IV. Decedent intended his widow to share. (*Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127; *Matter of Koch,* 282 N. Y. 462.) V. If the principal of the trust constitutes a reversion to decedent which passed to his executors upon his death in 1932, general legatees must be paid in full therefrom, but the balance must be distributed as in intestacy. (*Doctor* v. *Hughes,* 225 N. Y. 305; *City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134.) VI. The residuary trust under the will violates the rule against perpetuities. (*Matter of Wilcox,* 194 N. Y. 288.) VII. The widow's estate is entitled to receive her intestate share. (*City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134; *Street* v. *Post,* 197 App. Div. 304, 232 N. Y. 563.)

*Eli Whitney Debevoise* and *Harold C. Jesse* for respondents. I. The trust agreement did not create a reversion in the decedent and the courts below properly disposed of the principal of the trust as a remainder. (*Doctor* v. *Hughes,* 225 N. Y. 305; *City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134; *Fish* v. *Chemical Bank & Trust Co.,* 270 App. Div. 251; *Matter of Scholtz* v. *Central Hanover Bank and Trust Co.,* 295 N. Y. 488; *Whittemore* v. *Equitable Trust Co.,* 250 N. Y. 298; *Engel* v. *Guaranty Trust Co.,* 280 N. Y. 43.) II. The contention that decedent had a reversionary interest finds no support in the language of the trust agreement or of the letter or in the actions of decedent. (*Whittemore* v. *Equitable Trust Co.,* 250 N. Y. 298; *Guaranty Trust Co. of N. Y.* v. *Armstrong,* 294 N. Y. 666.) III. The trust company's contentions that if no reversion was created, the legatees under the will of decedent are entitled to the principal of the trust or in the alternative that that will was an exercise of the power in favor of his general estate, are without merit. IV. The property vested as a remainder to the next of kin of decedent as a class; the widow was not one of his next of kin within the meaning of the trust agreement. (*Matter of Waring,* 275 N. Y. 6; *Matter of Wolf,* 284 N. Y. 644; *Matter of Battell,* 286 N. Y. 97; *Trowbridge* v. *First-Stamford National Bank & Trust Co.,* 182 Misc. 180, 268 App. Div. 768, 294 N. Y. 785; *Matter of Lake,* 170 Misc. 840; *Matter of Cohn,* 184 Misc. 258.)

FULD, J. This appeal presents a controversy as to the persons entitled — upon termination of a life interest — to receive the principal of an *inter vivos* trust set up under a trust agreement executed on February 14, 1916, by two attorneys at law, Cornelius J. Sullivan and Paul M. Herzog.

It is conceded by all the parties that the life beneficiary of the trust — one Blanche Malli — had, or claimed to have, a cause of action against an undisclosed client of Sullivan, that the trust was created solely for the purpose of freeing him from annoyance by the beneficiary, and that he — the undisclosed client — was the original owner and source of the securities which formed the corpus of the trust as created.

The trust agreement provides that, upon the death of the life beneficiary, the principal is to be paid over to Sullivan, if living, or to such person as he may nominate in a specified manner; if, at his death, there has been no such nomination, then the principal shall pass " to such person or persons as may be entitled to receive the same as specific or residuary legatees under the Last Will and Testament of the said nominator, and in default of any such Last Will and Testament, then to such of the next of kin of said nominator as would be entitled to receive the same under the statute of distributions of the State of New York if the said principal had been owned by him at the time of his death intestate with respect thereto."

The beneficiary is still alive. Sullivan, however, died in April, 1932, survived by his widow and his four sisters. By his will, he left his residuary estate — " including all property over which I may have or hereafter acquire power of appointment " — to his executor upon a trust made dependent upon the lives of his widow and his youngest surviving sister.

The courts below have held the residuary clause of Sullivan's will invalid to the extent that it suspends for three lives in being the absolute ownership of the principal of the *inter vivos* trust (Personal Property Law, § 11). It is now urged that Sullivan, as creator of the trust, retained a reversionary interest in the corpus. If that be so, the residuary clause incorporating that reversion in a testamentary trust must, of course, be considered separate and apart from the *inter vivos* trust agreement, and, hence, would not entail an unlawful suspension of

absolute ownership. (*N. Y. Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33.)

The claim advanced must be rejected. Section 39 of the Real Property Law contains the statutory definition of reversion, which also applies with equal force to personal property. (Personal Property Law, § 11; see *Davies* v. *City Bank Farmers Trust Co.*, 248 App. Div. 380.) That section declares: " A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of one or more particular estates granted or devised." At its inception, then, ownership of a reversion *must remain* in the grantor or testator — or in those who take .from him by descent — since it can arise *only in the hands of the original owner;* a reversion, by definition, cannot be *created* by an instrument purportedly conveying or transferring it to another.

Any conclusion, therefore, that Sullivan's interest in the trust corpus constituted a reversion must necessarily depend, in the first instance, upon a determination that he was a " grantor " or " testator" within the intendment of section 39. That he could not be a " testator " is, of course, obvious, since the trust was created by a transfer *inter vivos.* That he may not be termed a " grantor ", without doing violence to the plain meaning of the statute, is equally clear.

As already indicated, the trust was created at the behest of Sullivan's undisclosed client, its corpus formed from securities supplied by him. There can be no doubt that the person who furnishes the consideration for the creation of a trust is the settlor, even though, in form, the trust is created by another. (*Morgan* v. *Fiduciary Trust Co.*, 290 N. Y. 615; *Maynard* v. *Farmers' Loan & Trust Co.*, 208 App. Div. 112, affd. 238 N. Y. 592; 1 Bogert on Trusts and Trustees, § 41; 1 Scott on Trusts, § 17; 3 Scott on Trusts, §§ 422A–425; Griswold on Spendthrift Trusts [2d ed.], §§ 487–491; cf. *Matter of Blake*, 226 App. Div. 580, affd. 252 N. Y. 613.) Since the client was thus, in legal effect, the settlor of the trust, it follows that Sullivan can hardly be regarded as " grantor " of the selfsame trust. Certainly, the word " grantor ", as used in the statute, must be given substantial meaning; it should not be construed to include a purely technical convey-

ancer, a mere conduit or dummy through whom title passes from the true owner to the ultimate grantee. Even if Sullivan had had legal title to the securities — which is not at all clear from the record before us — the equitable title would have remained in his client and, had the express trust failed for one reason or another, Sullivan would have held the property upon a resulting trust for him. (3 Scott on Trusts, §§ 422A–425.)

Since Sullivan's interest did not constitute a reversion, the residuary clause of his will is, in effect, an attempted exercise of the power of appointment granted him by the *inter vivos* agreement. (Personal Property Law, § 18; cf. *Low* v. *Bankers Trust Co.*, 270 N. Y. 143, 147–148.) The power, of course, relates back to and becomes a part of that agreement for the purpose of measuring lives; consequently, Sullivan's " residuary " trust is invalid to the extent that it suspends the absolute ownership of the *inter vivos* trust corpus for more than two lives in being. (Personal Property Law, § 11; Real Property Law, § 178; see *Low* v. *Bankers Trust Co., supra.*)

Ineffective exercise of a power of appointment is the same as nonexercise, and, hence, upon termination of the *inter vivos* trust, the principal will pass, as specified in the trust agreement, " to such of the next of kin of said nominator [i.e., Sullivan] as would be entitled to receive the same under the statute of distributions of the State of New York if the said principal had been owned by him at the time of his death intestate with respect thereto."

Thus, we are brought to the only remaining question in the case, namely, whether Sullivan's widow is within the content of the above language. In the light of settled authority, the answer is clear: use of the phrase " next of kin " in an agreement executed prior to September, 1930 — when amendment to the Decedent Estate Law (L. 1929, ch. 229) made a surviving spouse a distributee — does not include a widow. (*Matter of Waring*, 275 N. Y. 6; *Matter of Battell*, 286 N. Y. 97; *Trowbridge* v. *Trowbridge*, 294 N. Y. 785; *Matter of Cohn*, 297 N. Y. 536, decided herewith.)

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

**Judgment affirmed.**