Samuel H. Hofstadteb, J.
In this proceeding to settle the account of the trustee of an inter vivos trust a question has arisen regarding the validity of the exercise by the grantor of a power of testamentary appointment. One of the parties in interest objects to the determination of this question now, since the time for distribution of the principal has not yet arrived; the trustee, however, urges a present determination because the question is intertwined with that of the correct disposition of surplus income during the continuance of the trust and postponement would impose needless added expense on the trust estate. The position of the trustee commends itself to the court; all parties in interest are before the court and the question has been thoroughly discussed in the helpful briefs and reports of the guardians. In the circumstances, it is appropriate that the question be determined in this proceeding. (Matter of Lederer, 4 A D 2d 623, 625.)
Under the original trust indenture dated June 26, 1935, the income was payable to the grantor for life and on his death the principal was to be transferred as he might by will appoint and “ in default of such appointment the same shall constitute and be disposed of as part of his estate ”. By the original indenture the grantor reserved the right to revoke the trust in whole or in part and to amend it “ in any and every respect ’ ’.
The indenture was amended on December 4, 1947, to make provision for the payment out of income of $5,000 per annum to the grantor’s then wife. The excess income was to be paid to the grantor during his life. By the amendment the principal was on his death to be transferred as he appointed by will and in default of appointment was to “ constitute and be disposed of as part of his estate ”, the language being identical with that of the original indenture. The foregoing direction was, however, subject to the proviso that if, on the grantor’s death, none of the events on the occurrence of which the income payments to the wife were to be terminated, had taken place, the trustee was to retain $200,000 of the trust estate and pay the income thereon to the extent of $5,000 per annum to her and the excess income to the grantor’s estate. On the termination of the income payments to the then wife after the grantor’s death the trustee was to transfer the remaining principal of the trust fund as he by will appointed, and in default of appointment, to his estate. During the continuation of the income payments to the then wife — she and the grantor were divorced and she *534 has remarried — the grantor did not have the right to amend or revoke the amended trust indenture, though he did retain the right to withdraw from the corpus with her approval such securities as did not reduce the remaining corpus below $200,000. The grantor exercised this right of withdrawal so that the principal remaining in the trust at his death, as shown in the account, is about $234,000.
The grantor died a resident of Connecticut on November 14, 1956, leaving a will admitted to probate in that State. The will in express terms includes in the disposition of his residuary estate any property over which he has a power of appointment. The question of the validity of this attempted exercise of the power of appointment grows out of the provisions in the residuary clause. The residuary clause directs income payments in stated amounts to two of the grantor’s children by his first marriage, and to a child of his second marriage and divides the remainder of the income between his widow and another child of his second marriage. The children of the second marriage were, of course, born after the 1947 amendment of the trust indenture.
Belying on the rule that, for the purpose of measuring lives, the instrument exercising a power of appointment becomes a part of the instrument creating the power (Low v. Bankers Trust Co., 270 N. Y. 143, 148; Fargo v. Squiers, 154 N. Y, 250, 258-259) and that the validity of the exercise of the power is to be determined by the law of New York, the grantor’s domicil when the trust indenture was executed (Matter of New York Life Ins. & Trust Co., 209 N. Y. 585), it is argued by two guardians for infant children that the attempted exercise of the power is invalid. There is disagreement among the parties as to how far, if at all, the power of alienation is suspended in the trust indenture, as amended, and further conflict as to the nature of the income directions and the extent of the suspension in the will. In view of the conclusion which I have reached, it is unnecessary to state in further detail the provisions of the will or to analyze the many and varied contentions made. The controversy can be resolved without deciding whether the power of appointment was validly exercised or not, for in either case the principal of the trust is on its termination to be transferred to the grantor’s estate for disposition in accordance with the terms of Ms will.
If the will, read as part of the amended trust indenture, does not involve a forbidden suspension of the power of alienation, then further argument that the power of appointment was *535 validly exercised becomes superfluous, and the trust principal should be turned over to the grantor’s estate for disposition in accordance Avith the terms of his Avill.
If, on the other hand, the power of appointment was not validly exercised, the alternative direction that in default of appointment the trust principal be disposed of as part of the grantor’s estate takes effect. An illegal appointment is the equivalent of nonexercise of the power of appointment (Guaranty Trust Co. v. New York Trust Co., 297 N. Y. 45, 51; Low v. Bankers Trust Co., 270 N. Y. 143, 148-149, supra).
In my opinion the direction that the trust principal be treated as part of the grantor’s estate in default of appointment was the disposition of a reversion in him. If the interest so disposed of was a reversion, the provisions of the will disposing of it are not to be read into the trust indenture, but must be treated independently, and the reversion considered as the grantor’s property capable of free disposition by him (New York Life Ins. & Trust Co. v. Cary, 191 N. Y. 33, 39-40; New York Trust Co. v. Weaver, 298 N. Y. 1, 10-11; Guaranty Trust Co. v. New York Trust Co., 297 N. Y. 45, 49-50, supra; Duff v. Bodenkirchen, 110 Misc. 575, 582-584, affd. on opinion of Lehman, J., 193 App. Div. 898). Any suspension of alienation under the trust indenture is immaterial to the question Avhether the will effects a prohibited suspension.
The original trust indenture bespeaks a clear intention of the grantor to reserve to himself a reversion. The income of the trust was payable to him and he reserved the unlimited right to revoke or amend the trust. This retention of complete control over the trust property is expressive of a purpose to retain a reversion rather than to create a remainder. In 1939 the indenture Avas amended to give the grantor added powers of direction over the sale and purchase of securities in the trust, thereby emphasizing his purpose to maintain control. By the 1947 amendment the grantor surrendered the power to revoke or amend the trust, but only during the continuation of the payments to his then Avife. Any other restriction on his complete freedom of control Avas merely such as was necessarily incident to safeguard her rights under the marriage settlement. Nothing in the 1947 transaction reflected an intention to transform into a remainder Avliat had theretofore been a reversion.
In City Bank Farmers Trust Co. v. Miller (278 N. Y. 134, 143-145), the trust instrument directed that on the settlor’s death the principal should be disposed of as she appointed by will and in default of appointment to her distributees. The *536 court held that thereby a reversion in the settlor resulted. A like conclusion has been reached in other cases (Doctor v. Hughes, 225 N. Y. 305; St. George v. Fulton Trust Co., 273 App. Div. 516, 519; Sack v. Chemical Bank & Trust Co., 54 N. Y. 8. 2d 19). In final analysis, the determination hinges on the ascertainment in each instance of the intention. Study of the present trust indenture, as amended, persuades me of the grantor’s unmistakable purpose to establish a reversion in himself. It follows that the trust principal is now to be transferred to the grantor’s estate for disposition in accordance with his will. By this determination the wishes of the grantor will be fulfilled.
There being no objection to the account, it is settled as filed. Proceed accordingly.
Settle order.